Ronald Wayne **MITCHELL** and Willie Earl Ratliff, Appellants,

v.

The **STATE** of Texas, Appellee.

No. 46738.

Court of Criminal Appeals of Texas.

Jan. 16, 1974.

Daniel E. Hayes, Bay City, for appellant.

Carol S. Vance, Dist. Atty., and Jack Bodiford, Asst. Dist. Atty., Houston, Jack Salyer, Dist. Atty., Bay City, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

These appeals are from convictions for the offense of murder; punishment was assessed each appellant by a jury at thirty years.

Absent a challenge to the sufficiency of the evidence, suffice it to state that on August 19, 1970, at approximately 12:00 P.M., as William J. Provost left a grocery store in Houston and approached his automobile, two men were observed as they accosted him with a gun, placed him in the back seat of his vehicle and drove the automobile from the scene. Later that day, the automobile was abandoned in a ditch and Provost was found in, and removed in an unconscious state from, the trunk of the car. He was taken to a hospital where he died on the morning of August 21, 1970, the direct cause of death being hyperthermia and hypoxia.[1] Appellants Ronald Wayne Mitchell and Willie Earl Ratliff were jointly indicted for and found guilty by a jury of the murder of Provost with malice aforethought.

Appellants contend by their first ground of error that the trial court erred in admitting evidence of an extraneous offense.

Robert Lee Mills, Jr. testified that on July 31, 1970, he was living in Houston; that on the above date he went to the Singer Grocery Store in Houston; that as he was coming out of the grocery store the two appellants approached him, both of them having Afro haircuts and one of them with a gun in his hand; that they then made him get into his car and drive them around awhile; that after he drove them around, they made him get into the trunk of the car; and that they took eleven dollars from his wallet. Mills also testified that while one of the appellants was driving the vehicle, he succeeded in opening the trunk lid with tools he had in the trunk and jumped out of the car as it sped along the freeway at approximately 65 m. p. h. and received injuries from this jump. Mills promptly reported this event to the police department and again contacted them when he read in the newspaper that someone using his name was charged with the murder of William Provost.

Appellant Ratliff, testifying in his own behalf, stated that on August 19, 1970, he went over to "Dilly's" house between the hours of 12:00 A.M. and 12:30; that from there he went to the Elite Grocery Store; and then he went home, where he stayed with his sisters all afternoon. Appellant Ratliff also testified that he was not outside Hunt's Cafe on the date in question; that he was not with appellant Mitchell at any time during the day; that he did not run away from a blue car that had been wrecked in a ditch near his house; that he did not have anything to do with the murder of the deceased; and that he knew a young fellow by the name of Robert Lee Mills, Jr.

Appellant Mitchell, testifying in his own behalf, stated that on the morning of August 19, 1970, he first went over to Roo- ·

1. The pathologist defined hyperthermia as "excessive body heat, heat stroke" and hypoxia as "decreased amount of oxygen available to the blood and tissues of the body."

sevelt Womack's where he picked her up and that they both then went over to Dilly's house. Mitchell also testified that he remained at Dilly's house *all* day and that he did not see appellant Ratliff at all during the day in question. In addition, both appellants called approximately seven witnesses who corroborated their alibis on the day in question.

The state offered the evidence of the extraneous offense to prove identity, claiming such issue was raised by appellants' counsel's vigorous cross-examination of the State's witnesses. See Gillon v. State, 492 S.W.2d 948 (Tex.Cr.App.1973); Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972). Compare Caldwell v. State, 477 S.W.2d 877 (Tex.Cr.App.1972).

Appellants vigorously contested their identification by the State's witnesses on the premise of mistaken identity preparatory to the interposition of the defense of alibi. The voluminous record of 1,448 pages impressively portrays an extensive, searching and forceful cross-examination of each witness who identified either or both of the appellants at the scene of Provost's abduction, running from and in proximity to the place where Provost's automobile was abandoned, both at the trial, and at the examining trial. The interrogation was penetrating in connection with each witness's opportunity for observation and his recollection of details. Written statements given prior to the trial by some of the witnesses were used to impeach and discredit the identification of appellants by those witnesses. One witness was cross-examined in a manner that suggested his recognition of appellant Ratliff running from the vicinity of the abandoned automobile was a false identification prompted by animosity.

■■ We find that the answers elicited from the State's witnesses sufficiently raised the issue of identity to authorize the admission of the extraneous offense in question. Furthermore, when appellants advanced their defensive theory of alibi, this also raised the issue of identity. See Griffin v. State, 455 S.W.2d 298 (Tex.Cr.App.1970); Owens v. State, 450 S.W.2d 324 (Tex.Cr.App.1969).

Since identity was raised, the next question is whether there were distinguishing characteristics common to both the principal offense and the extraneous offense admitted into evidence. See Cobb v. State, 503 S.W.2d 249 (Tex.Cr.App.1973); Ford v. State, 484 S.W.2d 727 (Tex.Cr.App. 1972).

In the instant case, a pistol was used in each offense; each of the two offenses was committed on a person about to get into his car; each victim was first told to get in his car and then subsequently put into the trunk; the offenses occurred within a nineteen day time period of each other; and both of the appellants were described as having Afro haircuts.

■ No error is shown by the admission of the extraneous offense in question.

Appellants contend by their second ground of error that the trial court erred in sustaining the conviction of appellant Ratliff because he was at no time identified with any of the events of the crime. After reviewing the record in its entirety, we disagree.

Barbara Thomas testified that she lived in Houston, Texas, at 5006 Calvacade, Apt. 1, on August 19, 1970; that on the date in question, between the hours of 1:00 P.M. and 3:00 P.M., she was at her mother's house standing in the front yard; that she saw a car coming very fast down the street; and that she saw two men with "Afro" haircuts jump out of the car after it had crashed into the ditch, one of whom she identified as appellant Mitchell. Mrs. Thomas could not identify the second man who ran away from the car because he had a handkerchief covering his face.

Brad Neal testified that in the middle of August,[2] 1970, he was at his home at 2219

2. Neal could not be specific as to date in question.

Bringhurst in Houston; that he heard a helicopter flying over his house; that he then borrowed a bicycle and drove over to Russell Street where the helicopter was located; and that when he got there, he saw appellants running away from a blue Ford automobile that had run into a ditch. Mr. Neal also testified that appellant Ratliff was holding a handkerchief up to his face and was wearing a blue suit at the time in question.

■ We conclude that the evidence is sufficient to support the jury's finding that appellant Ratliff was a participating principal in the offense in question.[3]

Appellants contend by their third and final ground of error that the trial court erred in admitting the written confession of Willie Earl Ratliff[4] because such confession was not voluntarily given since it was elicited after he advised the officers he desired to remain silent. Reliance is premised on the admonishment stated in Miranda v. State of Arizona, 384 U.S. 436, at 444–445, 86 S.Ct. 1602, at 1612, 16 L. Ed.2d 694 (1966), in these words:

> ". . . if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him."

When the voluntariness of appellant Ratliff's written statement arose during the course of the trial, the trial judge properly conducted a separate hearing thereon outside the presence of the jury, after which appellant Ratliff's confession was admitted into evidence.

The thrust of appellant's third contention is that it being indisputably shown that appellant Ratliff told the officers he did not want to talk about the crime, his statement given thereafter is rendered involuntary and inadmissible as a matter of law by the *Miranda* decision.

■ The *Miranda* decision does not dictate that once an individual has invoked his privilege against self-incrimination, a statement thereafter secured from him is always involuntary and inadmissible. A statement, although made subsequent to a prior invocation of rights, is voluntary and admissible when the prosecution " . . . demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. State of Arizona, supra, at 444, 86 S.Ct. at 1612. Relational to the contention made here, the vice condemned by *Miranda* is a statement rendered involuntary by coercive custodial interrogation that succeeds in breaking the individual's previously declared will to remain silent. Thus, if the individual, once having invoked his privilege against self-incrimination, thereafter does in fact change his mind and knowingly and intelligently waives his rights, including the right to remain silent, and gives a statement, the prior invocation itself does not vitiate the statement under either the rationale or the holdings of *Miranda*. See Hill v. State, 429 S.W.2d 481 (Tex.Cr.App.1968, cert. denied 393 U.S. 955, 89 S.Ct. 384, 21 L.Ed.2d 367 (1968)), and cases cited therein.

■ To arrive at the ultimate finding that appellant Ratliff's statement was voluntary, the trial judge was required to determine the credibility of the witnesses and to resolve the conflicting evidence. Consistent with the finding is the evidence that prior to any interrogation appellant Ratliff was fully advised of his privilege against self-incrimination; there was no coercive interrogation, but only a custodial confrontation of not more, and probably less, than

---

3. Furthermore, see discussion of appellant Ratliff's confession in ground of error No. Three. See also Thomas v. State, 458 S.W. 2d 817 (Tex.Cr.App.1970).

4. The confession in question, State's Exhibit No. 5A, had all references in it to appellant Mitchell deleted, and the trial court gave a limiting instruction in its charge that appellant Ratliff's confession was not to be considered in any manner in determining the guilt or innocence of appellant Mitchell. See generally Evans v. State, 500 S.W.2d 846 (Tex.Cr.App.1973).

twenty minutes; although appellant initially invoked his right to remain silent, his subsequent change of mind was induced, not from coercion or even from further interrogation, but, after being only informed again of the evidence of his culpability, by the spontaneous desire to atone for his wrong; and that prior to taking his written statement, appellant again was advised of his complete rights, including his right to remain silent, within the ambit of *Miranda* and according to the requirements of as well as in the language used in Arts. 15.17 and 38.22, supra. The evidence is sufficient to support the finding of the trial judge that the State demonstrated that appellant Ratliff's statement was voluntary and admissible. See Dorsey v. State, 485 S.W.2d 569 (Tex.Cr.App.1972).

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.