James Joel **SWEIBERG, Jr.,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48645.

Court of Criminal Appeals of Texas.

July 2, 1974.

Dick Stengel, El Paso, for appellant.

Steve Simmons, Dist. Atty., Anita Ashton, Asst. Dist. Atty., El Paso, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed by the jury at twenty-seven years.

The sufficiency of the evidence is not challenged.

Appellant contends the court erred "in the admission of appellant's confession as the uncontroverted testimony shows that appellant wanted an attorney on two different occasions before making any type of statement, both requests made while appellant was under arrest undergoing custodial interrogation."

No motion to suppress was filed and facts relative to the taking of the confes-

sion were developed at the trial on the merits without objection. When appellant's statement was offered in evidence, objection was made for the first time by appellant, and the court ruled that the confession was "voluntary and admissible."

Officer Gomez of the El Paso County Sheriff's Office arrested appellant at 2:00 a. m. on August 26, 1972, in a food store in El Paso. Gomez stated he advised appellant of his rights. Appellant told Gomez he wanted a lawyer before he made a statement. Gomez took appellant to appellant's apartment on Roberts Street where other persons had been arrested for the same crime shortly after midnight. Captain Stout of the El Paso Sheriff's Office was at the Roberts Street apartment and Stout testified that he warned appellant of his rights and appellant stated that he wanted an attorney before he made a statement. Stout stated, "We quit questioning the man and took him to the Judge."

Christina Turner was called as a witness by appellant. Her testimony reflects that she was living with appellant at the time he was arrested. Appellant was unemployed, having been separated from the service where he was a military policeman. She heard appellant tell Stout that he would like to have an attorney before he gave a statement. She further stated that she was permitted to talk with appellant before he left the apartment for the judge's office "and we both decided at that time it would be better not to [give a statement]."

The officers arrived at Judge Meston's office about 3:30 a. m. where appellant was warned by Judge Meston. A copy of the warning given was identified and admitted into evidence.

Officer Stout testified that he did not see appellant until the next afternoon (Sunday, August 27th), when he took a statement from appellant. Stout stated that he again warned appellant of his rights before taking the statement, asked him if he understood his rights, and that appellant read the statement aloud, including the warning appearing thereon, before he signed the same. According to Stout appellant did not indicate that he wanted a lawyer before he made the statement or at any time during the giving of the statement.

Prior to the time appellant gave the statement appellant was visited by Turner and Military Policeman McClung. Turner said she advised appellant that it would be best for him to make a statement. Turner testified that the officers had not asked her to talk to appellant; that Captain Stout had told her it would be best for appellant to make a statement, "but I didn't do it on him saying that because I didn't know whether to trust the Captain or not, and I managed to talk to John McClung, to see what he thought."

Stout testified that neither he nor anyone else exerted "any force, made any threats, used any persuasion, or made any promises" in order to get appellant to sign the statement. Turner testified that she did not see or hear appellant threatened, abused or promised anything by the officers.

Appellant did not testify, except at the punishment stage of the trial, and the foregoing facts are undisputed.

Appellant argues that he made it known that he wanted to see an attorney before he made a statement and that the record does not reflect any indication that appellant started talking of his own volition. Appellant cites United States v. Crisp, 435 F.2d 354 (7th Cir. 1970) and United States v. Priest, 409 F.2d 491 (5th Cir. 1969) for the proposition that if the accused states that he wants an attorney, the interrogation must cease until an attorney is present.

In Nash v. State, 477 S.W.2d 557, this Court expressly declined to follow *Priest,* stating:

"By our decision today we do not mean to imply that once an accused, subjected to custodial interrogation, has requested counsel or indicated a desire to consult counsel, the law enforcement authorities may continue to interrogate despite the expressed wish. Nor may they threaten, trick or cajole an accused into a waiver of his constitutional rights in order to be able to continue the interrogation. What we do hold is that the request or express desire for counsel will not forever bar the State from interrogating the accused where there has been no consultation with counsel regardless of the circumstances. Waiver is possible if the prosecution meets its heavy burden in this regard."

See Hill v. State, Tex.Cr.App., 429 S.W.2d 481; Gunter v. State, Tex.Cr.App., 421 S.W.2d 657; Lee v. State, Tex.Cr.App., 455 S.W.2d 316; Miller v. State, Tex.Cr.App., 468 S.W.2d 818; Randolph v. State, Tex.Cr.App., 493 S.W.2d 869; Mitchell v. State, Tex.Cr.App., 503 S.W.2d 562; Brown v. State, Tex.Cr.App., 508 S.W.2d 91.

In Mitchell v. State, supra, it was stated:

"Thus, if the individual, once having invoked his privilege against self-incrimination, thereafter does in fact change his mind and knowingly and intelligently waives his rights, including the right to remain silent, and gives a statement, the prior invocation does not vitiate the statement under the rationale or the holdings of Miranda."

■ Coercive custodial interrogation that succeeds in breaking an individual's previously declared will to remain silent, the vice condemned by Miranda v. Arizona,[1]

is not shown in the present case. The record is devoid of any indication of coercion, either physical or psychological.

After appellant was arrested during the early morning hours of Saturday, August 26, 1972, he was warned of his rights by Officers Gomez and Stout. At this time he stated that he wanted to talk to a lawyer before making a statement. There is no suggestion or indication that appellant made any further request for an attorney. Appellant was taken before a magistrate where it is undisputed that he was again warned of his rights. According to Stout, questioning ceased after appellant told him he did not want to make a statement until he had talked to an attorney and insofar as the record reflects no further questioning took place until Sunday afternoon, August 27th.

It is significant that the statement was not made until appellant had been visited by Christina Turner and McClung and Turner had advised appellant to make a statement. It would appear that this visit must have been persuasive in appellant's decision; however, it must be noted that Turner expressly negated the possibility that her visit and advice resulted from requests or suggestion of police officers. While Officer Stout had said something to Turner about appellant making a statement, Turner stated that she did not rely on what he said, "because I did not know whether to trust the Captain." Thus, the advice given appellant by Turner, good or bad, cannot be imputed to the police. Before the statement was taken, Stout testified that he again warned appellant of his rights. The statement was not signed until appellant had read same aloud, including the warning, waiver of counsel and privilege against self-incrimination appearing thereon. According to Stout appellant did not evidence any desire for an attorney before or during the making of the statement.

[1]. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Unlike Nash v. State, supra, where a similar question was before this Court, there is no suggestion that appellant was handicapped by any intellectual or emotional problems. To the contrary, appellant was a twenty-six year old man who had just been separated from the service where he had served as a military policeman. It would appear that having had such experience he would be far more knowledgeable about the rights of an accused than the average person.

Viewing the totality of the circumstances, we conclude that the State has sustained its "heavy burden" of showing appellant knowingly and intelligently waived his right to counsel and hold that the evidence supports the court's finding that the confession was voluntary and admissible.

■ Appellant contends that reversal is required in that the trial court failed to make any findings of facts or conclusions of law relative to the admissibility of the confession as required by Article 38.22, Vernon's Ann.C.C.P.

The record before us contains a written order of the court setting forth its findings in admitting the confession into evidence which reflects a file mark and date following the filing of appellant's brief in the trial court.

As was stated in Shadrick v. State, Tex.Cr.App., 491 S.W.2d 681, "While such delay in entering the order is not to be commended, no harm to appellant having been shown by the delay, such order will be accepted. Clewis v. State, Tex.Cr.App., 415 S.W.2d 654; Gaston v. State, Tex.Cr.App., 435 S.W.2d 858."

No error is shown.

The judgment is affirmed.

Opinion approved by the Court.