Johnny Leroy HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 48880, 48881.

Court of Criminal Appeals of Texas.

Dec. 18, 1974.

Rehearing Denied Jan. 15, 1975.

William T. Miller, San Antonio, Garland G. Wier, San Antonio, (on appeal only), for appellant.

Ted Butler, Dist. Atty., and Fred Rodriguez, Charles Conaway, Bill White and Douglas C. Young, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

The appellant was tried by a jury on consolidated indictments charging murder with malice and robbery, and was convicted of each. Punishment was assessed at two thousand years' imprisonment and two hundred years' imprisonment, respectively.

The evidence reflects that appellant and a co-defendant, one Applewhite, drove to a service station in San Antonio on the evening of January 10, 1973. Applewhite was to remain with the car as a "lookout" while appellant robbed the station attendant. Appellant left the car, robbed the station attendant, and was returning to the automobile when he was approached by San Antonio police officer George Jacobs. Jacobs attempted to return appellant to the service station when a scuffle ensued, during which Jacobs suffered a gunshot wound which subsequently caused his death.

■ Appellant's first ground of error challenges the sufficiency of the evidence to support the conviction for murder (No. 48,880). He urges that the only evidence in support thereof is his own confession, and that his agency in the offense is uncorroborated by any other source. Appellant admits that his confession, standing alone, is sufficient evidence to establish his criminal agency. However, since he also argues that the confession was improperly admitted into evidence, it is urged that the confession should not be considered. Since we have determined that the confession was properly admitted (see the discussion of grounds of error two and three below), it could properly be considered by the jury, and was itself sufficient evidence to show the criminal agency of appellant. See Self v. State, 513 S.W.2d 832 (Tex.Cr.App. 1974) and McCall v. State, 512 S.W.2d 334 (Tex.Cr.App.1974).

■ Appellant's second and third grounds of error challenge the admission into evidence of his confession. It is urged that the court's ruling on appellant's motion to suppress was based on ". . . imaginary testimony of an unknown person who never appeared in court and did not testify." It is also urged that the confession was taken after appellant had asked for the presence of counsel and in spite of his refusal to waive that right.

The record of the hearing, outside the presence of the jury, on appellant's motion to suppress, does indeed reflect that the court partially based its findings of fact and conclusions of law upon the testimony of one Gloria Gutierrez, an alleged witness to the confession called, according to the court, by the defense. The record also reflects that no such person testified at the

hearing although appellant's signature on the confession was witnessed by a Gloria Gutierrez.

However, this matter was contained in what the court described as "tentative" or "rough draft" findings. Subsequent "final" findings omitted all reference to Gloria Gutierrez. The obvious error in the initial findings, while glaring, does not negate the fact that the other evidence actually presented at the hearing was sufficient to support the court's conclusion that the appellant's confession was voluntary and that he had knowingly and intelligently waived his right to counsel at the interrogation.

The evidence reflects that shortly after his arrest the appellant was warned of his rights by a magistrate. He also discussed his case with an attorney, but did not retain his services. Thereafter, appellant was taken from the Bexar County jail to the robbery division of the San Antonio police department for interrogation. At that time, he requested the presence of the attorney with whom he had discussed his case, and because counsel could not be reached the interrogation was postponed. Four days later, appellant was again brought to the police department, this time at the request of a woman, apparently his girl friend, who was also charged with robbery. After talking with her for a time, appellant told one of the officers investigating his case that he wanted to tell about "the job" and that he would give a statement. He subsequently confessed, and the record reflects that he read his confession, made corrections in the body of it and signed it. He had received warnings from the magistrate, as noted; from the attorney with whom he discussed the case; and he was read the warnings printed on his confession prior to the commencement of the interrogation which resulted in his confession. The confession, as noted, contained "boilerplate" warnings. It appears that appellant, who was twenty-six years old, a high school graduate and who read and wrote the English language, read the

entire confession, including the printed warnings and the waiver provisions.

The evidence presented supports the court's conclusion that appellant's confession was voluntary and that he knowingly waived his right to have counsel present at the interrogation. See Randolph v. State, 493 S.W.2d 869 (Tex.Cr.App.1973).

Appellant's fourth ground of error urges that the court erroneously refused to grant his motion for mistrial, based on suppression of evidence by the State.

The record reflects that appellant's co-defendant filed a motion for discovery (although the motion is not contained in the record) on which no apparent ruling was obtained. Later, during the trial, the State called as witnesses the police officer who investigated the offense and the woman who reported the shooting of Officer Jacobs. After each witness testified, counsel for appellant and counsel for his co-defendant were given copies of the witnesses' prior written statements for use in cross-examination. After the testimony and cross-examination of a third witness had been heard, counsel for appellant's co-defendant filed a motion for mistrial, urging that the statements contained evidence favorable to the defense and that the State, by not delivering the statements to the defense, had suppressed the evidence. After a lengthy and confusing discourse between the court, counsel for the State, counsel for the co-defendant, and counsel for appellant, the court granted a severance as to the co-defendant, but refused to grant a mistrial as to either party.

█ In view of the fact that the witnesses' statements were readily made available to both defense attorneys in compliance with the requirements of Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1961) and Zanders v. State, 480 S.W.2d 708 (Tex.Cr.App.1972), it is apparent that there was no basis for the court's action in granting a severance as to the co-defendant Applewhite. It follows that since there was no suppression of evidence, neither

Applewhite nor the appellant was entitled to a mistrial. The fact that a "mistrial" was erroneously granted to Applewhite would not entitle the appellant to the same generosity, absent some error actually requiring a mistrial. No such error occurred here. Appellant's contention, while presenting a novel situation, is without merit.

The fifth contention advanced urges that the court improperly required the appellant to call all his witnesses to the stand in order to have them testify outside the presence of the jury before he was allowed to offer their testimony in evidence.

The record reflects that appellant called as witnesses a man and wife who, with their counsel, were present in the court. The witnesses' attorney advised the court that he had instructed his clients to claim their Fifth Amendment privilege, and, in response to certain questions by appellant's counsel, they did so. Upon being advised that the witnesses would claim the privilege, the court required their testimony to be given outside the presence of the jury, apparently for the purpose of allowing the State to present its objections.

■ Appellant's only objection to this procedure was as follows: ". . . I think this is hindering and hamstringing the Defense." This objection is far too general to preserve the matter for our review. See Myers v. State, 491 S.W.2d 412 (Tex.Cr.App.1973) and Williams v. State, 491 S.W.2d 142 (Tex.Cr.App.1973). In addition, the record further reflects that both witnesses were later recalled in the presence of the jury and answered fully all the questions directed to them by counsel for appellant. The appellant's fifth ground of error is overruled.

■ Appellant's sixth ground of error urges that the court should have granted him a continuance when, during the trial, his counsel became too ill to represent him. The record reflects that counsel became ill on Friday and that the court then adjourned the proceedings and resumed them on Monday.

Counsel's personal physician testified during the proceedings on Friday. He stated that counsel appeared to be suffering from a viral infection and that twenty-four to forty-eight hours' rest should be ample recovery time.

On the following Monday, appellant himself sought a mistrial based on the evidence of his counsel's illness presented previously on Friday. No other evidence was offered and counsel did not testify, although he announced ready and proceeded with the case. The record reveals no evidence tending to indicate that counsel was so ill on Monday as to be incapable of effectively representing the accused. In fact, other than appellant's *pro se* motion for mistrial, no effort whatsoever was made to further postpone the proceedings. In view of the state of the record, we can only conclude that if the court had been called upon to grant a continuance, such request could properly have been refused.

■ Appellant's seventh and last ground of error urges that the State was improperly allowed to carve both murder and robbery from the same transaction. Appellant's reasoning overlooks the fact that two separate and distinct transactions are involved here. The robbery case involved one Luis Lopez, a service station attendant. The murder case involved the shooting of a police officer which did not occur until after the completion of the robbery. There was no improper carving invoking double jeopardy. Compare Jones v. State, 502 S.W.2d 164 (Tex.Cr.App.1973) and Lamberson v. State, 509 S.W.2d 328 (Tex. Cr.App.1974).

The judgments are affirmed.

ONION, Presiding Judge (concurring).

In the instant case appellant vigorously urges by brief and in oral argument that his extrajudicial confession was improperly admitted into evidence since he timely re-

quested the presence of his employed counsel, which request was ignored by the police who took the statement. He relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Since the trial court's order after a hearing on the motion to suppress the confession made no detailed findings of fact as to waiver of the right to counsel and only generally concluded that the appellant waived his rights, and since a close question is presented, I feel compelled to state my reasons for concurring in the result reached.

At the hearing on the motion to suppress the confession the record reflects that the 26 year old appellant was arrested for robbery on January 12, 1973, by Officers Weilbacher and Nickolajczyk and others. It appears that Officer Nickolajczyk read to the appellant his rights and appellant said he understood. Thereafter, he was taken to the police station where the first of three lineups was conducted. He was then taken before a magistrate who advised him that he was charged with robbery, set bail and advised him of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 15.17, Vernon's Ann.C. CP. Sometime thereafter, he was allowed to make a phone call and contacted a friend of his mother's. On this same date, although it is not exactly clear as to order of the sequence of events, it appears that Lt. Virgil Roberson also gave appellant warnings in accordance with *Miranda* and Article 38.22, Vernon's Ann.C.C.P. At this point the appellant requested counsel, and a phone call was made by Roberson to Legal Aid. No attorney ever appeared, but no interrogation followed this request for counsel. The following day, January 13, Attorney Jesse Gamez appeared at the jail, told appellant his mother had requested he visit with the appellant, and he advised appellant not to say anything. The attorney was present during the subsequent two lineups. On January 16, 1973, the appellant was taken from jail to the robbery office because Vivian Carter, who was in po-

lice custody for another robbery, had requested to see him. It appears she was appellant's girlfriend. Roberson was in and out of the room where the two were talking and was stopped on one occasion by appellant and told that he wanted to tell about "the job" (the murder of Officer Jacobs) and was ready to give a statement. Roberson then had the appellant taken to the homicide office where Detective Castillon warned the appellant in accordance with *Miranda* and Article 38.22, Vernon's Ann.C.C.P. A confession was then taken from appellant which was signed in the presence of a witness after the appellant had read the same and made a correction in the same. The appellant, after making the confession, was then taken before a magistrate with regard to the murder charge.

Testifying in his own behalf, appellant stated that while he was charged with robbery Officer Weilbacher had mentioned the shooting of the policeman to him, and he knew the officers were interested in both offenses. He related that when he had been booked at the jail on January 12, 1973, he had been beaten by some of the officers there, with one saying that the deceased Jacobs had been his friend. He testified on January 16 he was brought to the robbery office where he talked with Vivian Carter, who told him she was charged with robbery; that Roberson repeatedly explained the difference between murder with and without malice to him and told him that "he could cut the girl loose" if he confessed and "to be a man." He testified that he requested a lawyer at this point and Roberson told him Gamez was in court. He related that Castillon gave him no warnings and had part of the confession already typed. He said he was afraid being in jail, surrounded by officers, while being suspected of killing a police officer, and was told by the officers, "I'll be glad when Barlow (Judge) gets his hands on you and stuff." He testified that when given an opportunity to make corrections on the confession he was going to throw the confession in the trash basket, but he then saw Officer Weilbacher at the door

and, knowing his reputation, thought he was going to be beaten again, and he did not throw the confession away. He then asserted that the confession was signed out of fear.

Appellant relies upon that part of the *Miranda* decision which reads:

"Once warnings have been given, the subsequent procedure is clear . . . If the individual states he wants an attorney, the interrogation must cease until an attorney is present. At that time the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 384 U.S. at p. 474, 86 S.Ct. at p. 1627.

This court has been confronted with a number of cases involving the similar contention advanced by the appellant. In those cases we have made clear that the request or express desire for counsel will not forever bar the police from interrogating the accused, regardless of the circumstances. Waiver is possible if the prosecution meets its heavy burden in this regard. See, i. e., Gunter v. State, 421 S.W.2d 657 (Tex.Cr.App.1967); Hill v. State, 429 S.W.2d 481 (Tex.Cr.App.1968); Lee v. State, 455 S.W.2d 316 (Tex.Cr.App.1970); Miller v. State, 468 S.W.2d 818 (Tex.Cr.App.1971); Nash v. State, 477 S.W.2d 557 (Tex.Cr.App.1972); Randolph v. State, 493 S.W.2d 869 (Tex.Cr.App.1973); Mitchell v. State, 503 S.W.2d 562 (Tex.Cr.App. 1974); Brown v. State, 508 S.W.2d 91 (Tex.Cr.App.1974); Sweiberg v. State, 511 S.W.2d 50 (Tex.Cr.App.1974). We have not implied, however, that once an accused, subject to custodial interrogation, has requested counsel or indicated a desire to consult counsel the law enforcement authorities may continue to interrogate despite the expressed wish. Nor may they threaten, trick or cajole an accused into a waiver of his constitutional rights in order to be able to continue the interrogation.

Examining the record for evidence of waiver after appellant had requested counsel and had in fact consulted counsel, it is noted that Lt. Roberson testified appellant initiated the conversation with him as to giving a statement about "the job." Waiver in such cases as the instant one is more easily determined when the subsequent conversation is initiated by the suspect followed by a clear-cut waiver of counsel prior to the second or subsequent conversation or interrogation. See Nash v. State, supra, 477 S.W.2d at p. 561 and cases there cited. This, however, is only one factor to consider.

Further, it is observed that shortly after saying he wanted to give a statement he did in fact give a statement which he read, corrected and signed, the record showing he was 26 years old, a high school graduate who could read and write the English language. The signed confession reads in part as follows:

"I, Johnny Harris after first being duly warned by Det. Frank Castillon, at 12/50 PM. at Homicide Office—Police Hdqs. on January 16, 1973, that I have the right to have a lawyer present to advise me either prior to any questioning or during any questioning; and that if I am unable to employ a lawyer, I have the right to have a lawyer appointed to counsel with me prior to or during any questioning; and that I have the right to remain silent and not make any statement at all; and further, that any statement I make may be used in evidence against me at my trial; that if I decide to talk with any one, I can, and that I can stop talking to them at any time I want; The above rights are continuing rights which can be urged by me at any stage of the proceedings, *and I do hereby voluntarily waive these rights and give to the said Det. Frank Castillon the person to whom this statement is being made, the following statement: . . . . .*" (Emphasis supplied)

The mere signing of a boilerplate statement to the effect that an accused is knowingly waiving his rights will not discharge

the prosecution's burden of showing waiver, but certainly is a factor to be considered in determining if the accused affirmatively waived his rights. See McCandless v. State, 425 S.W.2d 636 (Tex.Cr.App. 1968); Torres v. State, 422 S.W.2d 741 (Tex.Cr.App.1968) (Concurring Opinion).

In the instant case we have a 26 year old appellant with a high school education who has been repeatedly given the warnings required by law, who has consulted with counsel, and who initiates the conversation which leads to the confession, is again warned of his rights by the person taking the statement, and then signs a statement containing a written waiver. When the "totality of the circumstances" is considered, I conclude that the evidence is sufficient to show the State discharged its burden and the appellant made a constitutionally permissible waiver as required by *Miranda*.

The issue of voluntariness was also submitted to the jury and, by their verdict, they rejected the claim of involuntariness.

I concur in the result reached.