**Tommy Ray KNEELAND, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52178.**

Court of Criminal Appeals of Texas.

Nov. 24, 1976.

---

James H. Clack, Andrews, John R. Lee, Kermit, for appellant.

Calvin W. Wesch, Dist. Atty., Kermit, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction under the old Code for murder with malice. A motion for change of venue was granted by the district court of Winkler County and the case was transferred to Pecos County. The jury assessed punishment at 550 years' confinement in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged. Appellant's four grounds of error relate to the admission of his confession into evidence. Although three statements were taken from the appellant in connection with this case, only the last one was admitted into evidence. The trial court conducted a lengthy *Jackson v. Denno* hearing to determine the voluntariness of the statements. The findings of fact and conclusions of law filed at the conclusion of this hearing recite that all three statements were voluntary and that the third statement, the only one to be admitted into evidence, was not the result of any exploitation of the first two statements given by appellant.

The appellant contends that the confession should not have been admitted into evidence because it was made after his arrest and request for counsel and because it was the fruit of the two prior statements given, which he contends were also involuntary.

Appellant did not testify at the pretrial hearing on his Motion to Suppress Statements, nor at the trial on the merits.

The record reflects that the first two statements were made by appellant while he was under arrest and in custody in Fort Worth for an unrelated offense of aggravated kidnapping. Appellant's wife had hired a Tarrant County lawyer to represent appellant in connection with this unrelated offense. This attorney had interviewed appellant and represented him in a writ of habeas corpus proceeding in connection with the kidnapping case.

After the writ hearing on the kidnapping case, appellant was returned to the city jail. Later, Fort Worth police detectives sought to interrogate him in connection with the kidnapping and another unrelated murder charge that had arisen. At this time, appellant requested that his attorney be present. After this request, he was placed back in the jail and no attempt was made to interview him. This was the first time appellant had requested an attorney since his arrest.

Shortly thereafter, Winkler County Sheriff Bell sought to interview appellant in connection with the instant murder. During this interview, appellant advised the sheriff that he wanted his attorney, at which time the interview was terminated.

Later, appellant consulted with his attorney and was returned to jail. A search warrant was then obtained in connection with the unrelated murder and kidnapping charges. Appellant went with the officers to his residence, where the warrant was to be executed. While at his residence, he told Fort Worth police detective Hudson that he wanted to talk with him. Hudson then took appellant to the Fort Worth district attorney's office and began interviewing him. Prior to beginning the interview, Hudson gave appellant his Miranda warning and specifically asked appellant if he wanted his attorney present. Appellant stated that he did not want his attorney present and that he understood his rights. Appellant then gave statement # 1 in connection with the instant murder. While it was not admitted into evidence, appellant contends it was involuntarily given and tainted statement # 3 which was admitted into evidence.

Appellant was then given a polygraph examination. Prior to beginning the examination, appellant was again warned of his rights and he stated he understood them and did not want his attorney present. After the examination, Detective Hudson advised appellant that it showed he was lying about the instant murder. Appellant then

proceeded to give statement # 2. Prior to this he was warned of his rights and he stated he did not want his attorney present.

During the course of taking statement # 2, Hudson was advised by an assistant district attorney that a restraining order had been issued preventing the interrogation of the appellant. The record reflects that appellant's attorney had obtained this restraining order from District Judge Gordon Gray. Hudson knew nothing about the restraining order until he was notified. Another assistant district attorney then called Judge Gray at home and advised him that appellant wanted to make a voluntary statement. Judge Gray then came down to the district attorney's office and talked to the appellant alone. Judge Gray testified that appellant told him he didn't want a lawyer and he wanted to make a statement. Appellant told the judge that he had not hired his attorney and he did not want a lawyer at the time he made his statements to the police. He also stated he didn't want a lawyer present then and wanted to give the statement. Judge Gray then gave appellant another warning. Judge Gray determined that appellant had not been mistreated, that appellant understood his rights, and that he did not want a lawyer and wanted to make a voluntary statement. At this time, Judge Gray entered an order rescinding the restraining order. After this, the judge told Detective Hudson to continue with the investigation.

Hudson then finished taking statement # 2. Before appellant signed it, appellant read it, corrected some errors, and specifically signed again where the statement says that he did not wish to talk to his attorney or any other lawyer or have any other lawyers present.

After all this, Sheriff Bell left Fort Worth with the appellant and took him to Kermit, Texas, where he was placed in jail. The next day, Bell took appellant before Justice of the Peace Jones and Jones gave appellant the magistrate's warning.[1] Appellant stated he understood the warning and told Jones that he wanted an attorney appointed. Jones testified that he called several attorneys in an effort to get one appointed and later, when he was prepared to appoint an attorney, the appellant stated that he wanted to waive his right to have an attorney appointed.

Later in the day, after appellant had lunch, Sheriff Bell talked to appellant concerning the facts of the instant murder. Appellant told him that he would give him another statement. Bell then advised appellant of his rights and appellant stated that he understood them. Bell specifically asked him whether or not he wanted a lawyer present during any interview questioning. Appellant replied that he did not want an attorney present. Appellant told Sheriff Bell that he wanted an attorney to represent him later on when his case was tried, but at that time he didn't want an attorney present. After this, statement # 3, the one that was ultimately introduced into evidence in this case, was given by the appellant. It was typed, and appellant read it, understood it and signed it in the presence of a secretary who was not a peace officer. Appellant knowingly and voluntarily waived all of his rights.

From the lengthy recital of the above facts, it can be seen that appellant never requested an attorney to be present when he gave any of the three statements in this case. Whenever it was indicated that he did want an attorney present, the interview was terminated and the officers never obtained any information from appellant concerning any of the cases except while taking the written statements.

The record reflects no evidence of any physical abuse, threats or promises by any of the officers at any time after appellant was arrested in Fort Worth. It further reflects that appellant had been fed and properly treated. Although the record reflects that after talking with his attorney in Fort Worth appellant had requested his attorney to be present at any questioning, there was no such request after appellant voluntarily initiated the conversation with

1. *See*, Art. 15.17, V.A.C.C.P.

Detective Hudson during the execution of the search warrant. The testimony of Hudson, confirmed by the oral statements made by appellant to Judge Gray, leads to the conclusion that appellant voluntarily, knowingly and intelligently waived the presence of legal counsel in making the confession of the murder in the case at bar, and that the confession was freely and voluntarily made. Coercive custodial interrogation that succeeds in breaking an individual's previously declared will to remain silent, condemned in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not shown in the instant case. *See, Sweiberg v. State*, 511 S.W.2d 50 (Tex.Cr.App.1974).

In *Brown v. State*, 508 S.W.2d 91 (Tex.Cr.App.1974), we held:

"The fact appellant at first told the officer he desired counsel did not render his statement given thereafter involuntary as a matter of law under the evidence in the case. A confession, although made subsequent to a prior invocation of rights, is voluntary and admissible when the prosecution demonstrates the use of procedural safeguards effective to secure the accused's rights. (Citations). Thus, if the individual, once having invoked his rights, thereafter does, in fact, change his mind and knowingly and intelligently waive his rights, the prior invocation does not vitiate the statement." (Citations). *Id.*, at 94.

Considering the totality of the circumstances, *Farr v. State*, 519 S.W.2d 876 (Tex.Cr.App.1975), we conclude the prosecution demonstrated successfully the use of the procedural safeguards referred to in the above quotation.

The trial court did not err in admitting the confession into evidence. All of appellant's grounds of error are overruled.

The judgment of the trial court is affirmed.