**Terry GOODNOUGH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00098–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 3, 1982.

functioning of the pistol.

Rogelio F. Munoz, Uvalde, for appellant.

Earle Caddel, Dist. Atty., Uvalde, for appellee.

Before KLINGEMAN, CLARK and BASKIN, JJ.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a judgment of conviction in a jury trial for rape of a child. The court assessed punishment at a term of ten (10) years in the Texas Department of Corrections.

The record reflects that on July 31, 1979, the complainant, S___ K___, a ten year old female who lived in the First Baptist Mexican Children's Home in San Antonio, was staying in her grandmother's home in Sabinal. Around 10:00 p. m., appellant, the complainant's uncle, took her, along with her two younger sisters, into his bedroom and forced all three of them to submit to sexual activities. The complainant testified that her mother and grandmother were absent at the time the rape occurred, and her father was asleep in another room. The next day, complainant reported the incident to her Children's Home caseworker, who came to the house and discussed it with the complainant's mother.

Appellant was arrested on either August 1st or 2nd, 1979. According to testimony by Constable Harwell Davis, appellant was taken before a magistrate, given *Miranda*[1] warnings, and placed in the Uvalde County jail. Davis testified that on August 3, 1979, he went to the Uvalde County attorney and swore out two separate complaints against appellant, one for incest and one for rape of a child. At approximately noon of the same day, Davis filed one of the complaints with Justice of the Peace George Dawson. Dawson testified that appellant was

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

brought before him for setting of bond and magistrate's warnings, pursuant to Tex. Code Crim.Pro.Ann. art. 15.17 (Vernon Supp. 1980–1981). Dawson stated that he did not know of the second complaint outstanding against appellant.

Davis testified that he took appellant back to the Uvalde County jail and placed him in an interrogation room in order to get a statement from him. To Davis' questioning, appellant replied, "I might better talk to my lawyer before I give a statement." Davis testified that he told appellant "[T]hat is your right. You have a right to do that." Without giving appellant a chance to get a lawyer, Davis left for Del Rio. At trial Davis contended that appellant never asked for a lawyer because the words "I might better talk to a lawyer" did not mean he was requesting a lawyer, and that, in fact, these words meant nothing. Subsequently, Davis denied that appellant said, "I might better talk to my lawyer."

Justice of the Peace Dawson testified that at approximately 5:00 p. m., the second of the two complaints was filed, possibly by Constable Davis, for rape of a child. Dawson issued a warrant, served it on appellant at that time, and again read him article 15.17 warnings. Davis testified that when he returned from Del Rio at about 5:00 p. m., he went back to appellant's cell to take a statement. When Dawson left appellant, Davis asked him if he wanted to make a statement and he responded, "I might better talk to my lawyer before." Davis testified that he replied, "Fine. That is your right." He further testified that appellant mentioned he might talk to him later, whereupon Davis responded, "Well, I'm here to talk to you now. I'm not going to be back." The record reflects that Davis did not tell appellant where he was going, but he stated at trial that he was on his way home to Sabinal. Davis went on to testify that appellant then relented and said, "Okay, I'll talk to you about it." It is apparently at this point that appellant gave his statement, which was put in written form by Davis and signed by appellant in front of two witnesses.

Justice of the Peace Dawson was not advised on either occasion that appellant had indicated that he had better talk to an attorney before he gave a statement to Davis. It was not until September 6, 1979, that Dawson was informed of appellant's interest in consulting with an attorney, whereupon counsel was immediately appointed. The trial court conducted a hearing on appellant's motion to suppress the confession. The motion was overruled and the confession was admitted into evidence at the trial.

Appellant's first ground of error alleges that the trial court erred in overruling appellant's motion to suppress his confession and in admitting it into evidence because it was involuntary as it had been taken without allowing him the right to counsel. We sustain appellant's ground of error.

In *Edwards v. Arizona*, 450 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), custodial interrogations ceased when Edwards, the arrested suspect said, "I want an attorney before making a deal." The next day officers visited him in the jail, advised him of his rights again, and obtained a confession, all without furnishing him counsel. The court held that Edwards did not voluntarily waive the right to have counsel present during interrogation, and that his confession was thus inadmissible. The court pointed out that although an accused may waive his rights and respond to interrogation, additional safeguards are necessary when the accused asks for counsel. The Court continued,

> . . . We now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates

further communication, exchanges, or conversations with the police.

450 U.S. at 477, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. *Citing Miranda v. Arizona, supra,* the Court in *Edwards* stated that once an accused asserts the right to counsel, custodial interrogation must cease until an attorney is present. 450 U.S. at 477, 101 S.Ct. at 1883, 68 L.Ed.2d at 384.

■ The facts in the case at bar are very similar to those in *Edwards*. Davis returned on his own volition to question appellant, not at appellant's request or suggestion, and appellant agreed to talk. On these facts, appellant's statement, like Edwards', was made without having had access to counsel, and at the instance of the authorities. The question that remains is whether appellant's statement "I might better talk to a lawyer first," was a sufficient invocation of his 5th, 6th, and 14th amendment rights to counsel.

The critical factor is that appellant responded to Davis' requests for statements with vocal reluctance to speak without an attorney present. If it was indeed unclear to Davis whether appellant had invoked this right, it was Davis' duty, as a peace officer acting under *Miranda*, to clarify appellant's position in order to honor his constitutional rights.

We find that by Davis' own admission at trial, he was aware of appellant's invocation of his right to counsel. The record further shows that he failed to take the necessary steps to facilitate it. When cross-examined about his own response to appellant's second statement that, "I might better talk to my lawyer before," Davis plainly stated that he replied, "Fine. That is your right." Davis' open acknowledgment that appellant had the right to talk to counsel is an indication that he was aware of appellant's invocation of such right.

Furthermore, we point out that appellant appeared twice before the same magistrate on the same day, in connection with the two separate complaints filed against him. On each occasion, the magistrate advised him of his rights, including the right to counsel, pursuant to Tex.Code Crim.Pro.Ann. art. 15.17 (Vernon Supp. 1980–1981). It is clear from the record that although the defendant was apprised of his right to counsel, neither the magistrate nor the arresting officer ever ascertained whether the defendant had a lawyer, or had funds to employ a lawyer, or wished to have a lawyer appointed. The final sentence of article 15.17 provides that "[t]he magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law." If the magistrate is to comply with this article 15.17 mandate it may often be necessary for the magistrate to inquire of the accused whether he has, or desires to have, counsel, either retained or appointed. It is unfortunate that the magistrate in this case did not make such an inquiry and resolve the question of waiver of right to counsel at the outset.

■ We will next address the State's contention that, assuming appellant did invoke his right to counsel, he subsequently waived it. We recognize that *Miranda* did not hold that once a suspect expresses a desire for counsel all interrogation must cease forever. *United States v. Green,* 433 F.2d 946 (5th Cir. 1970); *Nash v. State,* 477 S.W.2d 557, 562–63 (Tex.Cr.App.1972). The Court in *Edwards,* however, pointed out

... that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'

450 U.S. at 477, 101 S.Ct. at 1883–84, 68 L.Ed.2d at 385. The test generally employed is a survey of the "totality of the circumstances" [2] to determine whether the

---

**2.** *Kneeland v. State,* 543 S.W.2d 386, 389 (Tex. Cr.App.1976); *Reed v. State,* 518 S.W.2d 817, 821 (Tex.Cr.App.1975); *Harris v. State,* 516 S.W.2d 931, 937 (Tex.Cr.App.1975); *Sweiberg v. State,* 511 S.W.2d 50, 53 (Tex.Cr.App.1974); *Brookins v. State,* 499 S.W.2d 320 (Tex.Cr.App.

State has sustained the "heavy burden" imposed by *Miranda*[3] of showing that appellant knowingly and intelligently waived the right to counsel. *Reed v. State*, 518 S.W.2d 817, 821 (Tex.Cr.App.1975); *Harris v. State*, 516 S.W.2d 931, 936 (Tex.Cr.App.1975); *Sweiberg v. State*, 511 S.W.2d 50, 53 (Tex.. Cr.App.1974).

Waiver need not be express, *Moreno v. State*, 511 S.W.2d 273, 276–77 (Tex.Cr. App.1974), and a boilerplate waiver is not determinative, but is a factor to be considered, *McKittrick v. State*, 541 S.W.2d 177, 183–84 (Tex.Cr.App.1976), in viewing the totality of the circumstances. Although appellant signed a "boilerplate" waiver of counsel in the case at bar, viewing the totality of the circumstances surrounding appellant's confession, we believe the evidence does not support a finding that the State sustained its heavy burden of showing appellant knowingly and intelligently waived his right to counsel before signing the confession. We reject the State's contention that such waiver occurred subsequent to appellant's indication of desire for counsel when he told Davis he "might talk with him later." Davis' response to appellant's tentative offer to "talk later" was subtly coercive in nature: "Well, I'm here to talk to you now. I'm not going to be back." By leading appellant to believe that he had the single choice of either talking now, without an attorney, or never, Davis was acting inconsistently with his duty to honor the appellant's constitutional right to counsel.

We find that when appellant indicated a desire for counsel, Davis did not perform his duty to clarify appellant's request in order to honor his constitutional right. Therefore, without making counsel available, and without securing a knowing and intelligent waiver of the right to counsel, and in the absence of appellant's request or suggestion, Davis returned to the jail and elicited a statement. The foregoing authorities and circumstances demonstrate that appellant's indication of desire for counsel, coupled with the State's failure to meet its "heavy burden" of showing waiver, constitute a sufficient and unabandoned invocation of appellant's right to counsel. The confession was taken in derogation of that right, and its admission was reversible error.[4]

In his second ground of error appellant contends that the indictment under which he was tried was fatally defective because it joined the offense of rape of a child and incest in a single indictment in violation of Tex.Code Crim.Pro.Ann. art. 21.24 (Vernon Supp. 1980–1981).

The statute in question provides in part: (a) Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offense arises out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

The relevant Penal Code provision states: In this chapter, "criminal episode" means the repeated commission of any one offense defined in Title 7 of the Code (Offenses Against Property).

Tex.Penal Code Ann. § 3.01 (Vernon 1974). Since rape of a child is a Title 5 offense against the person (§ 21.09) and incest is a

---

1973); *Hancock v. State*, 462 S.W.2d 36, 38 (Tex.Cr.App.1970).

**3.** "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel . . . ." 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d 694.

**4.** The United States Supreme Court in *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), held "the judgment must be reversed because of the admission in evidence of the coerced confession." *Id.* at 568, 78 S.Ct. at 850, 2 L.Ed.2d 975. In a case with facts similar to the instant case insofar as the confession is concerned the Court of Criminal Appeals, sitting en banc, reversed and remanded saying, "A confession in order to meet constitutional standards, must be both voluntary and taken in compliance with *Miranda*. *Ochoa v. State*, 573 S.W.2d 796, 801 (Tex.Cr.App.1978). *See also Reed v. State*, 518 S.W.2d 817 (Tex.Cr.App. 1975). In the case at bar, appellant's confession was both involuntary and in violation of *Miranda*.

Title 6 offense against the family (§ 25.02), it would not have been proper to proceed to trial under this indictment. The record further indicates, however, that when appellant presented his motion to quash the indictment on this basis to the trial court, the State abandoned the count alleging incest. After this abandonment by the State, the trial court overruled the motion.

We hold that the indictment as originally presented by the grand jury was duplicitous and thus in violation of Tex.Code Crim.Pro. Ann. art. 21.24 (Vernon Supp. 1980–1981). We further hold, however, that the State's abandonment of the incest count cured and removed the error, and the record indicates that the abandoned count was never brought to the attention of the jury. Such error is not fundamental so as to cause the indictment to charge no offense against the law and thereby be void. *American Plant Food Corp. v. State*, 508 S.W.2d 598, 603–04 (Tex.Cr.App.1974). *See also Melley v. State*, 93 Tex.Cr.R. 522, 248 S.W.2d 367, 360–70 (1923). We therefore disagree with appellant's contention that the improper joinder of the two offenses voided the indictment. The second ground of error is overruled.

The judgment is reversed and remanded for a new trial.