Brady Lynn BECK, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–83–504CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 25, 1984.

Rehearing Denied Nov. 15, 1984.

Stanley G. McGee, Buddy Stevens, Angleton, for appellant.

Jim Mapel, Angleton, for appellee.

Before JUNELL and SEARS, JJ., and T. GILBERT SHARPE, J. (Retired).

## OPINION

JUNELL, Justice.

This is an appeal from a capital murder conviction. The appellant was 16 years old at the time of the offense. He was certified as an adult, tried and sentenced to life. We reverse and remand for new trial because the trial court should have suppressed admission of appellant's oral confession given to a police officer after appellant informally requested an attorney.

The following testimony was heard by the trial court in a pretrial suppression hearing requested by appellant. Appellant was arrested at about 9 p.m. November 2, 1982, at his Lake Jackson home by a Lake Jackson Police detective and Brazoria County Sheriff's Lieutenant Matt Wingo. He was informed of his rights by the detective using a juvenile warning card. He was taken to the juvenile detention facility in Angleton, Texas. The record is silent as to further events that night. On November 3, 1982, appellant was taken to the Brazoria County sheriff's office and fingerprinted and photographed by Lt. Wingo. At 11:15 a.m. he was taken to a fourth floor deputy's office where Justice of the Peace Walter Mathews read the juvenile warnings required by Tex.Fam.Code Ann. § 51.09(b)(1) (Vernon Supp.1984).

After the magistrate left, Lt. Wingo entered the office to interview appellant. Appellant asked Lt. Wingo "if he should have a lawyer present before he gives me a written statement." Lt. Wingo declined to make a decision for appellant; instead he told appellant that he would not take a written statement. At that stage of the investigation Lt. Wingo knew that the victim's wallet was still missing and that appellant was suspected of having discarded it during the crime. Lt. Wingo also knew

that if information from appellant's oral statement led to discovery of the wallet, that statement could be admissible. Appellant told Lt. Wingo about the crime. Whether the statement was elicited in question-and-answer form or given in an uninterrupted narrative is not reflected in the record.

After the confession Lt. Wingo telephoned Officer Ronnie Duncan with information on where the wallet could be found. Officer Duncan, using that information, found the wallet in an area that he and Lt. Wingo had unsuccessfully searched the day before using information given by Beck's accomplice.

Appellant testified at the suppression hearing to essentially the same facts, adding that he also gave Lt. Wingo the name of his lawyer, Sam Lee. He also claimed that Lt. Wingo promised that what was said would not leave the room. Lt. Wingo remembered that the name Sam Lee came up sometime during the investigation, but did not remember appellant specifically asking to see him before giving the statement. Lt. Wingo specifically denied any offer of confidentiality.

■ The trial court denied the suppression motion because the wallet was discovered as a consequence of the oral confession. At trial the court instructed the jury to disregard appellant's oral statement if they did not believe beyond a reasonable doubt that the confession was voluntarily given and that the wallet was found as a direct result of the statement. The threshold question here is whether under the constitutions of this state and the United States, appellant invoked his right to counsel by asking whether he should have a lawyer present before giving a written statement. If it is determined that appellant's actions did invoke his right, it is clear that the state has not met its heavy burden to prove that appellant knowingly and intelligently waived the right to counsel. *See Green v. State*, 667 S.W.2d 528, 529 (Tex.Crim.App.1984) (en banc); *Reed v.*

*State,* 518 S.W.2d 817, 821 (Tex.Crim.App. 1975).

In *Ochoa v. State,* 573 S.W.2d 796 (Tex. Crim.App.1978) (en banc) the appellant informally invoked his right to counsel when he said to the interviewing officer "that he probably ought to talk to a lawyer ... or didn't want to sign anything until he talked to a lawyer." 573 S.W.2d at 799. The officer responded to this statement by giving the suspect coffee and cigarettes and talking about families, horses and children to "get on his good side" before turning the conversation back to the offense. 573 S.W.2d at 800. Ochoa's conviction was reversed because the confession should have been suppressed. The state attempts to distinguish *Ochoa* by contending that in *Ochoa* the officer initiated the conversation, while Lt. Wingo testified that it was appellant who initiated any conversation after mentioning a need for a lawyer. We are not persuaded. Lt. Wingo admitted that he promised not to take a written statement. That agreement could be taken as an invitation to make an oral statement instead. There was no evidence of a break in the "interview" after the desire for an attorney was indicated. Lt. Wingo may have ceased "interrogation" but he did not cease the interview.

Another case on point is *Goodnough v. State,* 627 S.W.2d 841 (Tex.App.—San Antonio 1982, pet. ref'd). In *Goodnough* a constable came to the suspect's jail cell after the suspect was served with a second complaint and asked him if he wanted to make a statement. The response was "I might better talk to my lawyer before." The constable's reply was, "Well, I'm here to talk to you now. I'm not going to be back." Then the suspect relented. The appeals court found that the appellant had invoked his right to counsel. "The critical factor is that appellant responded to Davis' requests for statements with vocal reluctance to speak without an attorney present. If it was indeed unclear to Davis whether appellant had invoked this right, it was Davis' duty, as a peace officer acting under *Miranda,* to clarify appellant's position in order to honor his constitutional rights."

627 S.W.2d at 844. Appellant's first ground of error is sustained. A new trial must be held.

Appellant's second ground of error complains about the same confession, but on the ground that Lt. Wingo deceived appellant into giving an oral statement. The second ground is overruled. It is superfluous.

■ Appellant's third ground of error is that the confession to Lt. Wingo is inadmissible as a product of an illegal arrest because the warrant for arrest was not based on probable cause. Again, our decision on ground one makes the point moot, but we will say that the application for immediate custody and probable cause (juvenile arrest warrant) does set out why a detached and neutral magistrate should believe the informer. The informer, a friend of appellant's accomplice, made a sworn written statement attached to and adopted by reference into the complaint signed by Lt. Wingo. The informer related in detail information that Beck's accomplice had told him about the murder, including the type of car the victim had been driving, the way the shooting occurred and that the weapon was a .22 caliber. Officer Wingo's complaint stated that a body had been found with two bullet holes from a .22 caliber pistol. Under *Bellah v. State,* 653 S.W.2d 795 (Tex.Crim.App.1983) (en banc) the complaint and sworn statement clearly provided probable cause to issue the warrant. The third ground of error is overruled.

In the fourth and fifth grounds of error appellant argues that Gerald Don Shelton, appellant's uncle, should not have been allowed to testify as to Beck's confession to him because Shelton was acting as an agent for law enforcement authorities and did not give *Miranda* warnings to appellant. The grounds of error were preserved in the same suppression hearing discussed above. Shelton, who was close to appellant and had on occasion kept the boy in his own home, went to appellant's house the evening of November 2, 1982, because he had heard the boy was in trouble. Shelton

pointed to a newspaper story about the murder and asked if appellant were involved. Appellant answered that he had killed the boy. The uncle then remained at the house talking to the boy about the murder. He was trying to convince appellant to get a lawyer and turn himself in.

■ Appellant contends that the exclusionary rule in Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon 1970) requires exclusion of the confession to the uncle whether or not the uncle was acting as an agent of law enforcement. Article 38.23 does apply to peace officers and individuals alike, but it comes into play only when discovery of the evidence was done in violation of the law. There is no evidence in the record that the uncle was without a legal right to be in his sister's house. As long as he had permission to be where he was, any evidence he obtained there is admissible. *Hall v. Texas,* 643 S.W.2d 738 (Tex.Crim.App.1983) (en banc). The inadmissibility of oral confessions is also governed by Tex.Code Crim. Proc.Ann. art. 38.22 § 3 (Vernon Supp. 1984), which excludes only improperly taken custodial interrogations. Custody means in the custody of law enforcement officers or their agents. *See Arnold v. State,* 659 S.W.2d 45 (Tex.App.—Houston [14th Dist.] 1983, no pet.). There is no evidence that the uncle was acting as an agent of the police when he went to appellant's house as a concerned uncle. There is no evidence that the uncle had even spoken to police before going to see appellant. A similar situation occurred in *De Leon v. State,* 201 S.W.2d 816 (Tex.Crim.App.1947). After participating in a shooting, the defendant went to a friend's house to consult about turning himself into the sheriff. The court, in interpreting the statutory predecessor to Article 38.22, held that the confession given to the friend was admissible. Appellant's fourth and fifth grounds of error are overruled.

■ The sixth ground of error complains that the state injected injurious and prejudicial matter before the jury panel during voir dire when the prosecuting attorney told the panel that he was there to make sure that the defendant got a fair trial. The sixth ground of error is overruled. A prosecutor is, under law, obligated to see that justice is done. Tex.Code Crim.Proc.Ann. art. 2.01 (Vernon Supp. 1984). It cannot be prejudicial to inform the panel of that fact.

■ The last nine grounds of error are that the trial court allowed the state to misstate the law during voir dire when the prosecuting attorney used hypothetical situations to see if the potential juror could under some circumstances grant probation to a person convicted of capital murder. The appellant complains that the hypotheticals used by the state described manslaughter, not murder. The appellant does not list the affected jurors by name, but cites to pages in the transcript. None of the jurors involved were seated on the jury. If there was error, it was harmless. Grounds of error seven through fifteen are overruled.

We reverse and remand for a new trial because appellant's oral confession to Lt. Wingo should have been suppressed.