Peter Andrew ARNOLD, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–81–480CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 14, 1983.

Don Ervin, Bob Tarrant, Houston, for appellant.

Janiece Longoria, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction of aggravated assault on a police officer. Upon trial by jury, appellant was found guilty of the offense. Punishment was assessed at five years imprisonment in the Texas Department of Corrections. We affirm the conviction.

Because the sufficiency of the evidence is being challenged, a brief rendition of the facts that led to appellant's conviction is necessary. On January 27, 1980, two Houston police officers, J.W. Clampitte and Gerry M. Broussard, were driving down a street in Bellaire on their way to investigate a crime. The officers were in an unmarked police vehicle with Louisiana license plates. Neither officer was in uniform. The police officers passed appellant, who thereafter proceeded to follow them. Officer Clampitte, hereinafter referred to as complainant, made a U-turn to see whether the appellant was in fact following them. Appellant proceeded to make a U-turn. Complainant pulled over to the side of the road. Appellant pulled over alongside com-

plainant and stopped in the middle lane. Appellant got out of his car first, and then the complainant got out of his car. Complainant said, "What could I do for you?" According to complainant, appellant began cursing and screaming at him to get out of his town. Complainant testified that he said, "Hey hold it, we are police officers" before any physical contact had occurred between them. Appellant then grabbed at complainant's face and tried to dislodge his glasses. Complainant showed him his badge at a distance of two to three feet away. Complainant took his glasses off, whereupon he received numerous blows in the face. Complainant kicked the appellant, and by this time Officer Broussard had come to complainant's aid. Both officers forced appellant to the ground. Complainant hit the appellant over the head with his gun, whereupon appellant said that he quit.

Officer Broussard, who himself sustained minor injuries, testified that he did not hear complainant identify himself to appellant as a police officer. Broussard did say, however, that he saw complainant open his coat from behind as though he were showing his badge. Several eye witnesses testified that the appellant was getting the best of the fight until complainant hit him on the head with his gun. Officer Broussard handcuffed appellant, called the dispatcher and requested that the Bellaire Police Department be called. Shortly thereafter, the Bellaire Police arrived. The investigation was then turned over to Officer Zamora of Bellaire. An ambulance took appellant to Bellaire Hospital.

During treatment at the Bellaire Hospital emergency room, appellant told a nurse that he had finally gotten those FBI or CIA people who had been watching him for a couple of years. While appellant was being transported by the police to Ben Taub Hospital, he voluntarily told them that the FBI "sent one of the biggest guys out to get him." Appellant made a point that "it was an awfully big FBI agent" and that they were "out to get him." Appellant told the officers that he knew it was an FBI agent by the car he was driving.

Appellant's first ground of error, argued in a supplemental brief, alleges that the trial court erred by not granting his motion for instructed verdict, because the evidence is insufficient to sustain the verdict. The record reflects that appellant moved for an instructed verdict at the close of the State's case, and then proceeded to put on his defense, not renewing the motion for instructed verdict at the close of the evidence. Therefore, we are not required to pass upon the contention that the evidence was insufficient at the time the State rested its case. *Shirley v. State,* 501 S.W.2d 635 (Tex.Cr.App.1973).

Nevertheless, we have reviewed the evidence in the light most favorable to the verdict, and conclude that there is sufficient evidence to sustain the conviction. Appellant argues that CIA or FBI agents are not peace officers as defined under Art. 2.12 TEX.CODE CRIM.PRO.ANN. (Vernon 1977); therefore, the statements that he made to the nurse and the police officer would not be evidence that he knew complainant was a police officer. Appellant asserts that the evidence fails to support the allegations in the indictment. However, complainant testified that he informed the appellant he was a police officer before the fight began. That is direct evidence that appellant did in fact have knowledge that the complainant was a police officer. Further, complainant's testimony is somewhat supported by Officer Broussard's observation from behind. The appellant's statements to the nurse and the police officer were circumstantial evidence that he knew complainant was a police officer, or some type of law enforcement officer. That fact that there was conflicting testimony does not render the evidence insufficient to support the conviction. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Cr.App.1981). The evidence being sufficient to sustain the conviction, appellant's first supplemental ground of error is overruled.

In two related grounds of error, appellant contends that the trial court erred by allowing a nurse who treated the appellant and a policeman who transported him to the hospital to testify concerning oral statements made by appellant while in custody. Appellant argues that this testimony was admitted in violation of TEX.CODE CRIM.PRO. ANN. art. 38.22, § 3 (Vernon 1979). However, we find that TEX.CODE CRIM.PRO. ANN. art. 38.22, § 5 (Vernon 1979) is controlling in this situation and renders the testimony admissible.

The record reflects that a nurse who treated the appellant in the emergency room of Bellaire Hospital testified in the State's case in chief that appellant told her that he had "finally gotten those people who had been watching him for a couple of years." Appellant indicated to the nurse that FBI or CIA people "had been watching him." Appellant contends that the nurse's testimony was inadmissible because he was in police custody at the time he made the statement; thus, it was the result of custodial interrogation. However, the voluntary statements made by appellant were not the result of custodial interrogation because the nurse was not a police officer, nor was she acting at the request of police officers to elicit incriminating information from the appellant. The questions asked by the nurse, and appellant's responses to them, were for the purpose of a diagnostic evaluation of the appellant. There is no indication that the statements were other than voluntary.

In the recent case of *Chambliss v. State,* 647 S.W.2d 257 (Tex.Cr.App., 1983), the Court of Criminal Appeals clarified the law in this area by concluding that:

> ... while the 1977 legislature was still concerned with the reliability of oral statements, its concern was with oral statements resulting from custodial interrogation, not simply statements made in custody. ...
>
> We ... hold that statements which are not "the result of" or do not "stem from" custodial interrogation are admissible under Article 38.22 on the question of guilt,

and not merely to impeach a defendant who testifies ...

The testimony of the nurse regarding appellant's statements to her was properly admitted into evidence.

In the second related ground of error, appellant contends that the rebuttal testimony of the police officer who transported appellant to Ben Taub Hospital regarding appellant's statements to him was inadmissible under Article 38.22, § 3. The record reveals that it was necessary for the appellant to be transported to Ben Taub Hospital. Upon being transported, appellant was given his *Miranda* warnings. Enroute to the hospital, appellant made several voluntary statements to the police. Appellant said that "the FBI sent one of the biggest guys out to get him" and "that (it) was an awfully big FBI agent." The officer testified that these statements were made while the appellant was in police custody, but that they were not the result of custodial interrogation; rather, they were made voluntarily after appellant had been given his *Miranda* warnings. Again, Article 38.22, § 5, applies. The police officer's testimony was properly admitted. *Mead v. State,* 643 S.W.2d 421 (Tex.App.—Corpus Christi 1982, pet. ref'd). Under the *Chambliss* case, *supra,* this testimony would have been admissible in the State's case in chief as substantive evidence, since the requirement that testimony of this sort be used in rebuttal for impeachment purposes only no longer exists. Appellant's first and second grounds of error are overruled.

In his second supplemental ground of error, appellant contends that the court's charge to the jury was fundamentally defective because it authorized a conviction on a theory not alleged in the indictment.

The indictment in this case alleges that on January 27, 1980 appellant:

> did then and there unlawfully intentionally and knowingly cause bodily injury to J.W. Clampitte, hereinafter styled the complainant, a peace officer in the lawful discharge of an official duty, by striking the complainant with his fist, *knowing at*

*the time that the complainant was a peace officer.* (Emphasis added).

■ In applying the law to the facts of the case, the court charged the jury in the following manner:

... if you believe from the evidence beyond a reasonable doubt, that the defendant ... did then and there intentionally or knowingly cause bodily injury to J.W. Clampitte, a peace officer in the lawful discharge of his official duty, when the said Peter Andrew Arnold *knew or had been informed* that the said J.W. Clampitte was a peace officer ... you will find the defendant guilty of the offense of aggravated assault ... (Emphasis added).

The above charge tracked the words of TEX.PENAL CODE ANN. § 22.02(a)(2) (Vernon 1974) which are:

(a) A person commits an offense if he commits assault as defined in Section 22.-01 of this code and he:

(2) causes bodily injury to a peace officer *when he knows or has been informed* the person assaulted is a peace officer ...

When that portion of the court's charge to the jury that applies the law to the facts authorizes a conviction on a theory alleged in the indictment and on one or more other theories not alleged in the indictment, the charge contains fundamental error and reversal is mandated on direct appeal. *Morris v. State,* 609 S.W.2d 782 (Tex.Cr.App.1981), and cases cited therein; *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979). The Court in *Cumbie v. State, supra,* described the origins of this fundamental error rule as follows:

The evil of the charge that enlarges on the indictment is that it authorizes conviction on proof different from (and sometimes less than) that required to prove the allegations in the indictment. That evil is not present in this case, because proof of threatening and placing in fear of death is not different from (or less than) proof of threatening and placing in fear of bodily injury. "Bodily injury" means physical pain, illness, or any

impairment of physical condition. V.A.P.C., Section 1.07(a)(7). Death necessarily involves impairment of physical condition (if not pain and illness), so "death" necesarily includes "bodily injury". Therefore every "threatening and placing in fear of death" necessarily includes "threatening and placing in fear of bodily injury;" proof of the former is not different from (or less than) proof of the latter. The evil presented by the charge that enlarges on the indictment is not present in this case...

■ Our analysis of the instant case parallels that of the *Cumbie* case. The mere fact that error occurs in a trial court's charge does not mean that there is automatically fundamental or reversible error. Fundamental error occurs only when it is demonstrated that the error contained in the charge was calculated to injure the rights of a defendant, or the record as a whole reflects that the error in the charge prevented the appellant from receiving a fair and impartial trial. *Grady v. State,* 634 S.W.2d 316 (Tex.Cr.App.1982); *Gates v. State,* 643 S.W.2d 183 (Tex.App.—Tyler 1982, no pet.).

■ We hold that the words "knew or had been informed" are not materially different from "knowing at the time" and therefore, did not authorize a conviction on proof different from, or less than, that required to prove the allegations in the indictment. Knowledge or information that the person assaulted is a peace officer are not, we think, alternative forms of the same offense. Since the State has no right to require a defendant to give self-incriminating testimony, evidence of the defendant's knowledge will normally consist of the defendant being informed at the time that the victim was a peace officer. No fundamental error is present. Since there was no objection to the charge at the time it was read to the jury, we are precluded from reviewing this ground on any other basis. Accordingly, appellant's second supplemental ground of error is overruled.

Appellant's third supplemental ground of error alleges that it was fundamental error to omit the word "unlawfully" from the charge. Where the facts alleged in the indictment clearly show the offense to be unlawful, an express allegation of unlawfulness is unnecessary. *Ex parte Reed,* 610 S.W.2d 495 (Tex.Cr.App.1981). Here, the wording of the indictment is sufficient to indicate that the offense is unlawful. Additionally, there was not a proper objection to the omission of the word "unlawfully" at the time the charge was read to the jury. Therefore, any error has not been preserved for appeal. This contention is not fundamental error; therefore, it is not a proper ground of error for a supplemental brief. Appellant's third supplemental ground of error is overruled.

The conviction is affirmed.