**Opinion issued January 17, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00648-CR

———————————

## CLEMMIE ELNORA ST. AMAND, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1182011

## MEMORANDUM OPINION

A jury found appellant, Clemmie Elnora St. Amand, guilty of third-degree-felony assault of a public servant.[1]  The trial court assessed her punishment at two

---

[1]     *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon 2011).

years' probation.  In four issues, appellant argues that (1) the evidence was legally insufficient to support the finding that she knew the complainant was a public servant; (2) she was denied effective assistance of counsel; (3) the trial court erred in denying her the right to confront and cross-examine a witness to establish bias; and (4) the trial court erred in denying her the right to admit evidence of multiple subpoenas and to cross examine a witness concerning the documents sought by the subpoenas and the failure to respond to the subpoenas.

We affirm.

## Background

Appellant's autistic son attended a special-needs program at Bailey Middle School, a school in Spring Independent School District located in Harris County. On September 5, 2008, during the second week of classes, appellant attempted to drop her son off at school by knocking on a side door, which was marked, "STOP! Not an Entrance."  This door was not used as an entrance for parents dropping off students.

Cynthia Howlett, a dyslexia specialist, testified that she answered the door at about 8:15 or 8:30 a.m., and appellant told her she was there to drop off her son. Howlett testified that she told appellant that no teachers were there yet, and appellant should wait while Howlett found someone to take her son.  Howlett testified that she called for the complainant, Elizabeth Dill, who worked at the

2

school as a paraprofessional. She testified that appellant seemed "irate," so, after Dill approached, Howlett went back into her classroom to type a report about this interaction and to call for an administrator.

Dill testified that she arrived at school that day around 8:15 a.m. and heard Howlett ask for her help with a parent. She testified that she approached and spoke to appellant about proper student drop-off procedures. Both appellant and Dill testified that this was the first time they had ever met each other. Appellant told Dill that she needed to leave her son there so that she could drop off her daughter at another school.

Howlett and Dill testified that appellant's son proceeded to walk past the talking adults into one of the classrooms. Jerrard Stanley, another paraprofessional who was familiar with appellant's son, escorted him to the correct classroom while appellant and Dill spoke. Appellant's son then approached Dill, who began unpacking his backpack. Appellant approached and told Dill she would unpack her son's backpack herself. She told Dill that she would not leave her child unattended with Dill. Dill stuck her arm in front of appellant, telling her that this was part of her son's everyday routine. Dill stated that, while both women had their hands on the backpack, appellant struck her chest with her fist. Dill fell back onto a desk and sustained bruising. Howlett testified that she heard yelling, but she did not witness the assault because she was in her classroom.

3

Stanley testified that he was in the room with Dill when Howlett told them there was a parent outside. Stanley had met appellant previously because her son had been assigned to Stanley's room at the beginning of the year. Stanley stated that appellant's son had attended the first day of school in his classroom, but he had not returned after the first day. He understood that appellant "was unhappy about the first day" because her son "came home with a soiled diaper." Stanley testified that he had not been aware that the student had soiled his diaper at school, and if he had known, he would have changed him. Stanley stated that even after the student was transferred to another classroom, Stanley still interacted with him because the two special-education classrooms interact throughout the day. Regarding the complaint about the soiled diaper, Stanley testified, "You never want something like that to happen because you . . . want to do your best." He believed the actual complaint was directed at appellant's son's teacher and not at him, as the paraprofessional.

Stanley testified that appellant became upset when her son entered his former classroom. Appellant accused Stanley and Dill of allowing her son to walk off, and she claimed they were not paying attention to him. Stanley stated that he and Dill attempted to calm appellant, and he told her that it was okay, that the students went in and out of both classrooms all day, and that he would get her son. Stanley then directed the student across the hall to his new classroom. Stanley was

4

observing Dill attempting to help the student unload the contents of his backpack when appellant approached Dill, attempted to pull the backpack away, and told Dill that she would take care of her son's backpack. He then saw appellant strike Dill with a closed fist. Stanley stepped between the two women and told appellant that she needed to leave. Appellant "stormed" out of the room and yelled.

On cross-examination, appellant's counsel began to question Stanley about the student's first day and the incident with the soiled diaper. Counsel asserted that the State had opened the door by questioning Stanley about his prior relationship with appellant's son and the reason he was transferred to a different classroom. Counsel sought to question Stanley further about the issue to demonstrate his bias against appellant. The trial court allowed her to "ask him if there was a complaint filed by [appellant] against him based on an incident that occurred the first day of school, the second day of school." The trial court ruled, "We're not going to go into this soiled diaper incident." The trial court also stated that appellant could ask whether "there [was] an incident in which there was an argument between [Stanley] and [appellant] after a complaint was filed. . . ."

Appellant's counsel then questioned Stanley regarding the filing of a complaint on or around the first day of school. Stanley again testified that there "was an issue" and that he assumed that appellant had directed her concern at her son's teacher. Stanley testified that appellant met with the teacher and principal at

5

that time, but he was not allowed to stay in the meeting because they had agreed that the paraprofessionals would not be involved. Stanley stated that he believed appellant's son was transferred to a different classroom because of the soiled diaper incident, but "they never talked to [him] directly about it." Appellant's attorney asked, "Okay, now whose responsibility is it for, if a diaper has to be changed?" The State objected on the basis of relevance, and the trial court sustained the objection. Appellant's attorney moved on to a new line of questioning. Appellant never made an offer of proof or bill of exception regarding any testimony she was prevented from eliciting from Stanley.

Appellant testified on her own behalf. She stated that she had not met Dill prior to arriving at the school on the morning of the incident. She testified that she had dropped her son off at the side door before and that she was uncertain why there was a problem dropping him off that morning. Appellant testified that, once she and her son had entered the correct classroom, her son went to Dill and Dill helped him remove his backpack. Appellant stated that she asked Stanley, who was also in that same room, whether it was okay for her to leave her son there, and he told her it was fine because the students "float from class to class." Dill then began helping the student unload his backpack. Appellant approached and told her "that's okay because I'm going to take my son with me." Appellant testified that Dill then pulled the backpack away from appellant's reach and appellant "fell into

6

her." At that point, Stanley approached, took the backpack, and "then they started saying that [appellant] assaulted [Dill]."

Appellant introduced a recording of the school district police department's dispatch call regarding the incident and played it for the jury. Appellant also sought to introduce multiple subpoenas she had issued in an attempt to procure the recording. The State objected to the admission of the subpoenas on the basis of relevance. Appellant argued that the subpoenas went unanswered and were relevant to show that the school district did not want to comply with appellant's investigation of the case. The trial court sustained the objection.

The jury found appellant guilty of assault of a public servant. This appeal followed.

## Sufficiency of the Evidence

In her first issue, appellant contends that the evidence was legally insufficient to sustain her conviction because there was no evidence that she knew the complainant was a public servant.

## A.     Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);

*Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

**B.     Analysis**

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2011). If the assault is committed against "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty," the statute provides for increased punishment. *Id.* § 22.01(b)(1). A "public servant" is defined as a "person . . . employed, or otherwise designated as . . . an officer, employee, or agent of the government." *Id.* § 1.07(a)(41)(A) (Vernon Supp. 2012). An independent school district is an agency of the state. *Guin v. State*, 209 S.W.3d 682, 684 (Tex. App.—Texarkana 2006, no pet.); *Moore v. State*, 143 S.W.3d 305, 311 (Tex. App.—Waco 2004, pet. ref'd) (holding that school superintendent is "public servant" under section 1.07(a)(41)(A)); *see also In re J.P.*, 136 S.W.3d 629, 630 (Tex. 2004) (noting that juvenile commits assault on public servant pursuant to section 22.01(b)(1) by hitting and kicking public school teacher); *Powell v. State*, 549 S.W.2d 398, 400 (Tex. Crim. App. 1977) (holding that school district is branch of government).

Appellant argues that the State failed to prove that she knew that Dill was a public servant discharging an official duty. Appellant argues that she had not met Dill prior to the incident, no one identified Dill as a school employee, and Dill was not wearing a uniform or a badge identifying her as a school employee.

In this case, when appellant sought to leave her son at the school, Howlett summoned Dill to help her. Dill came to the door to take appellant's son. She discussed with appellant the school's drop-off procedures and explained that no visitors were allowed in the school unless they had come through the front office. Appellant testified that her son approached Dill, and Dill helped her son remove his backpack. Appellant observed that Stanley—a paraprofessional whom appellant knew had worked with her son previously—was also in the room with Dill. Dill relayed to appellant that she and the student had a morning routine together. After appellant allegedly struck Dill, appellant sought to report the incident to the school principal.

When we consider the facts in the light most favorable to the verdict, we conclude the jury could infer that appellant knew Dill was an employee of the school discharging her duties. *See Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007) (holding that jury is permitted to make reasonable inferences from evidence). Dill was present in the classroom at the start of the school day; she was summoned by a teacher to help appellant and her son; she had knowledge of school policies; and she demonstrated a familiar demeanor toward the student and other school staff.

Appellant cites *Arnold v. State* and argues that, because Dill never identified herself as a public servant and was not wearing a badge or some other distinctive

10

clothing or identification, the State failed to establish that appellant knew Dill was a public servant. *See* 659 S.W.2d 45, 46–47 (Tex. App.—Houston [14th Dist.] 1983, no pet.) (upholding conviction for assault of public servant when officer testified that although he was not in uniform at time of assault, he identified himself as officer to assailant). However, appellant cites no authority, nor could we find any, indicating that such an explicit identification is required.

We overrule appellant's first issue.

### Ineffective Assistance

In her second issue, appellant argues that her trial counsel was ineffective for failing to make a bill of exception regarding the excluded testimony of Jerrard Stanley concerning the soiled diaper incident.

**A.      Standard of Review**

To make a showing of ineffective assistance of counsel, an appellant must demonstrate that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008). The appellant must prove ineffectiveness by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). "Failure of appellant to make either of the required showings of

11

deficient performance and sufficient prejudice defeats the claim of ineffective assistance." *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To

prevail, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63. Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his or her actions before a court reviews that record and concludes trial counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *see also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003) (emphasizing importance of developing record specifically addressing sufficiency of counsel's representation and stating, "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose").

**B.      Analysis**

Appellant sought to question Stanley about her son's first day and the incident with the soiled diaper. Appellant asserted that the State had opened the door by questioning Stanley about his prior relationship with appellant's son and the reason he was transferred to a different classroom, and she intended to demonstrate Stanley's bias against her. The trial court allowed her to ask Stanley about any complaints appellant had filed against him based on the incident from the first day of school and whether "there [was] an incident in which there was an argument between [Stanley] and [appellant] after a complaint was filed," but the trial court refused to allow appellant to question Stanley regarding the details of the incident itself.

Appellant questioned Stanley regarding the filing of a complaint on or around the first day of school. Stanley testified that there "was an issue" and that he assumed that appellant had complained about her son's teacher. Stanley stated that he believed appellant's son was transferred to a different classroom because of the soiled diaper incident, but "they never talked to [him] directly about it." Appellant's attorney asked, "Okay, now whose responsibility is it for, if a diaper has to be changed?" The State objected on the basis of relevance, and the trial court sustained the objection. Appellant's attorney moved on to a new line of

14

questioning. She never made an offer of proof or bill of exception regarding any testimony she was prevented from eliciting from Stanley.

Appellant argues that her counsel's failure to make a bill of exception regarding Stanley's testimony "denied [her] the right to convince the court to allow [her] to explore the potential bias of a witness" and that this error was clearly prejudicial and undermined confidence in the outcome of the trial. However, appellant did not assert ineffective assistance of counsel in her motion for new trial, and her counsel has not testified regarding her reasoning for not making a bill of exception in relation to Stanley's testimony. As the Court of Criminal Appeals has stated, "[T]rial counsel should ordinarily be afforded an opportunity to explain [her] actions before being denounced as ineffective." *Rylander*, 101 S.W.3d at 111. Without more than the arguments made here by appellant, we cannot determine whether her trial counsel acted in accordance with a reasonable strategy. *See id.*; *Bone*, 77 S.W.3d at 833; *see also Massaro*, 538 U.S. at 504–05, 123 S. Ct. at 1694 (stating that appellate record is typically insufficient to support ineffective assistance claim because it does not reflect reasons for counsel's acts or omissions); *Mitchell*, 68 S.W.3d at 642 ("The reasonableness of counsel's choices often involves facts that do not appear in the appellate record.").

Thus, appellant has failed to establish her claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Cannon*, 252 S.W.3d

at 349; *see also Rylander*, 101 S.W.3d at 110 (holding that failure to establish either prong defeats claim of ineffective assistance).

We overrule appellant's second issue.

## Excluded Evidence

In her third issue, appellant argues that the trial court erred in denying her the right to admit evidence of her previous dispute with Stanley concerning a soiled diaper. In her fourth issue, appellant argues that the trial court erred in denying her the right to admit evidence of multiple subpoenas issued to the police department and to cross-examine a witness regarding that evidence.

## A.    Standard of Review

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

16

## B.    Jerrard Stanley's Testimony

Appellant argues that she sought to introduce evidence that she had a previous dispute with Stanley concerning a soiled diaper because the State opened the door and because the evidence would have been probative of Stanley's bias against her.  She argues that the trial court denied her the right to confront and cross-examine Stanley regarding this previous dispute.  However, she failed to preserve this error for consideration on appeal.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Texas Rule of Evidence 103. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).  Rule 103 provides, in relevant part, that error may not be predicated upon a ruling that excludes evidence unless "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked."  TEX. R. EVID. 103(a)(2); *see also Mays*, 285 S.W.3d at 889 (holding that offer of proof may consist of concise statement by counsel or may be in question-and-answer form).  Appellant made no such offer of proof regarding the testimony she wished to elicit from Stanley regarding the conflict over the soiled diaper.  Thus, she failed to preserve this complaint for appellate review.  *See Mays*, 285 S.W.3d at 889.

We overrule appellant's third issue.

17

## C. Subpoenas for the Dispatch Tape

Appellant further argues that the trial court violated her Sixth Amendment confrontation right because it refused to admit evidence showing bias against her. Appellant argues that the trial court erred in denying her the right to admit seventeen unanswered subpoenas requesting production of a recording of the dispatch call made regarding the incident and to question the records custodian to establish bias against her.

Here, appellant—not the State—sought to introduce multiple subpoenas obtained by her in an attempt to procure the recording, and she sought to question the custodian of the police records regarding the unanswered subpoenas. The State objected on the basis of relevance. Appellant argued that the subpoenas went unanswered and were relevant to show that the school district did not want to comply with her investigation of the case. Appellant further argued that "right now it is our turn to present a case" and that the subpoenas "are certified copies under the Rule in reference to a 911 tape." Appellant further argued that her questions for the records custodian were "not pertaining to anything that's outside the scope of what his duties are" and were "very relevant in reference to our theory of the case." The trial court sustained the State's objection. Appellant did not raise an objection on the basis of the Sixth Amendment or on the basis of her right to confront or cross-examine the witnesses against her.

18

To preserve a complaint for review on appeal, a party must make a timely, specific request, objection, or motion to the trial court that states the grounds for the ruling sought, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510 (Tex. Crim. App. 2001). Furthermore, the complaint on appeal must comport with the trial objection. *See Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

At trial, appellant argued only that these documents and testimony were relevant to her case in chief. She did not assert that confronting or cross-examining the records custodian—a witness whom she called—would aid her defense in any way, nor did she argue that the failure to admit the subpoenas and any related testimony would violate her rights under the Sixth Amendment. Thus, appellant's objection in the trial court did not preserve any appellate complaint regarding her Sixth Amendment right of confrontation. *See* TEX. R. APP. P. 33.1(a); *Swain*, 181 S.W.3d at 367; *see also Muniz v. State*, 851 S.W.2d 238, 255 (Tex. Crim. App. 1993) (holding that failure to timely and specifically object waives even constitutional rights).

We overrule appellant's fourth issue.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).